IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THOMAS W. CREMEEN,

        Petitioner,

v.

JEAN HILL,

        Respondent.

Civil No. 03-804-AS

FINDINGS AND RECOMMENDATION

PATRICK J. EHLERS
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, OR 97204

    Attorney for Petitioner

HARDY MYERS
Attorney General
LESTER R. HUNTSINGER
Senior Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, OR 97301

    Attorneys for Respondent

ASHMANSKAS, Magistrate Judge.

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Petition for Writ of Habeas Corpus should be DENIED, and this action should be DISMISSED.

## BACKGROUND

Late in the evening of August 24, 1994, James Rick was drinking beer and playing video poker at the Meadows Tavern. Closing time for the tavern was early in the morning of August 25, 1994, and Petitioner and Mr. Rick were the last two patrons. The bartender at the tavern saw the two leave together, and understood they were going to breakfast.

Almost immediately upon walking out the tavern door, Mr. Rick was knocked unconscious. He regained consciousness in the front seat of a car, and was again knocked unconscious. He testified this occurred repeatedly, that over a number of hours he would regain and lose consciousness. At one point, he awoke to see a man going through his wallet. At another, he jumped out the window of the moving vehicle. Witnesses saw this occur, and saw an unidentified man put Mr. Rick back into the car and drive away.

The next thing Mr. Rick recalled was being in the back seat of a car parked in an apartment complex. He got out and started yelling, and someone came over and asked questions. After that, Mr. Rick was taken back to the tavern where he had left his car,

and was thrown out into the parking lot. He did not have his keys or watch, and his wallet was empty. Mr. Rick sat in the car until the tavern owner came out and drove him home.

Three witnesses saw Mr. Rick with Petitioner at the apartment complex. Ian Hartung, who lived with his mother, Joyce Loring, was coming home from work around 4:00 a.m. on August 25, 1994, when he saw a suspicious car on the side of the apartment building. Hartung and a friend, Don Stoefil, approached the car, where they saw Petitioner beating Mr. Rick. Petitioner told the two that Mr. Rick was his uncle, that he was drunk, and that Petitioner was trying to prevent him from driving. Petitioner struck Mr. Rick several times, and told him if he said anything he would be knocked out.

Hartung went into the apartment and woke his mother, who went outside and saw two men fighting. Petitioner told Loring his uncle was drunk, but Mr. Rick said he had been robbed. Mr. Rick's face was covered with blood. Ms. Loring went back into the apartment and called police, but they did not respond before Petitioner drove away with Mr. Rick.

Stacy Horner, who was bartending at the Meadows Tavern that night, subsequently identified Petitioner from a computerized photographic throw-down as the person who left the tavern with Mr. Rick. Ian Hartung, Don Stoefil, and Joyce Loring also identified Petitioner from the photographic throw-down as the individual they

saw beating Mr. Rick at the apartment. Mr. Rick was never able to identify his attacker.

Police obtained a bloody sweatshirt at the apartment, which Hartung saw Petitioner discard. An Oregon State Police Criminalist obtained blood samples from Petitioner and Mr. Rick. Through DNA testing, she concluded that blood spots on the neck and sleeve of the sweatshirt were consistent with Mr. Rick's blood, and that a blood spot on the cuff was consistent with Petitioner's. At trial, Petitioner presented the expert testimony of Dr. Randell Libby, who refuted the accuracy of the DNA test.

Petitioner was convicted by a Clackamas County jury on charges of Kidnaping in the First Degree, Assault in the Second Degree, and Assault in the Third Degree. The trial judge had previously granted a motion for acquittal on a harassment charge, and the jury returned not guilty verdicts on charges of Sodomy in the First Degree and Robbery in the First Degree. For sentencing purposes, the third and second-degree assaults were merged, and the trial judge sentenced Petitioner to 240 months' imprisonment for the Kidnaping and a consecutive 36 months for the assault.

Petitioner appealed, presenting six claims of trial error. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. State v. Cremeen, 149 Or. App. 404, 942 P.2d 302, rev. denied, 326 Or. 62, 944 P.2d 949 (1997).

4 - FINDINGS AND RECOMMENDATION -

Petitioner then sought state post-conviction relief ("PCR"). Petitioner raised 32 claims of ineffective assistance of trial counsel, and six claims of ineffective assistance of appellate counsel. Following an evidentiary hearing, the PCR trial judge denied relief. Petitioner appealed, but again the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. <u>Cremeen v. Johnson</u>, 173 Or. App. 170, 21 P.3d 664 (2001), <u>rev. denied</u>, 335 Or. 114, 61 P.3d 255 (2002).

Petitioner filed this federal habeas corpus action on June 17, 2003. In his Petition, he alleges numerous claims for relief. In his memorandum in support, however, Petitioner addresses only three claims[1]: (1) trial counsel was ineffective for failing to hire a qualified DNA expert; (2) appellate counsel was ineffective for failing to challenge in-court identifications; and (3) appellate counsel was ineffective for waiving oral argument on direct appeal. Respondent concedes Petitioner exhausted his available state remedies on these claims, but argues the state courts' decisions denying relief are entitled to deference because they are not contrary to or an unreasonable application of clearly established federal law.

---

[1] Petitioner does not, however, waive his remaining grounds for relief.

5 - FINDINGS AND RECOMMENDATION -

## LEGAL STANDARDS

A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he demonstrates that the state court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1172-75 (2003).

A state court acts "contrary to ... clearly established Federal law" if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if it decides a case differently than the Supreme Court on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412 (2000); Ramdass v. Angelone, 530 U.S. 156, 165-66 (2000). An "unreasonable application of clearly established Federal law" occurs if a state court identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the prisoner's case or unreasonably refuses to extend the governing legal principle. Williams, 529 U.S. at 412; Ramdass, 530 U.S. at 166.

Under 28 U.S.C. § 2254(d)(2), this Court may also grant habeas relief if the state court's decision was based on an unreasonable determination of the facts in the state record. Before relief may be granted under this clause, the state court's decision must be more than merely wrong; it must be objectively unreasonable. Taylor v. Maddox, 366 F.3d 992, 999 (9th Cir.), cert. denied, 125 S.Ct. 809 (2004). The Ninth Circuit describes this as a "daunting standard," which will "be satisfied in relatively few cases." Id. at 1000. In conducting a review, this Court must look to the last reasoned state-court decision. Van Lynn v. Farmon, 347 F.3d 735, 738 (9th Cir. 2003) (citing Franklin v. Johnson, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002)), cert. denied, 541 U.S. 1037 (2004).

## DISCUSSION

### I. Ineffective Assistant of Trial and Appellate Counsel

Petitioner argues he received ineffective assistance of both trial and appellate counsel. Under clearly established Supreme Court law, to prevail on a claim of ineffective assistance of counsel, a petitioner must show that his trial counsel's performance fell outside the wide range of reasonable professional assistance and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000). There is

a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689.

A petitioner must identify the acts or omissions of counsel that petitioner alleges were not the result of reasonable professional judgment. Id. at 690. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance. Id.

If counsel's performance is found to be deficient, any deficiencies must be prejudicial to the defense in order to constitute ineffective assistance of counsel. Id. at 691. Prejudice occurs where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

In the state PCR proceeding, Petitioner argued his trial counsel was ineffective for failing to hire a qualified DNA expert, and that appellate counsel was ineffective for failing to challenge in-court identifications and for waiving oral argument on direct appeal. The PCR trial judge rejected these arguments in a lengthy "Judgment on Petitioner's Request for Post-Conviction

8 - FINDINGS AND RECOMMENDATION -

Relief." The opinion contained the following pertinent findings, discussion, and conclusions:

### Additional Findings and Conclusions of Fact

1. The evidence submitted in this case fails to establish that the PCR method of DNA analysis utilized in this case was defective. There is no showing that the RFLP and Slot Blot methods of analysis were the only tests which can produce a valid result under the circumstances involved in this case.

2. There is no showing that the photographic throw down was defective in this case.

3. The evidence in this case shows a vigorous defense of the Petitioner by Trial Counsel. It appears that everything that could have been done by Trial Counsel on behalf of the Petitioner prior to trial and during trial was done by Defense Counsel.

4. There is no showing that Appellate Counsel prejudiced Petitioner by waiving oral argument.

### Discussion

Petitioner has worked very diligently in attempting to find some basis -- any basis -- to set aside his convictions and send the matter back to the Trial Court for retrial. Although Petitioner has concentrated his efforts in this case to attacks on the DNA evidenced [sic] and photographic throw down identification of him as the one who assaulted the victim, it must be recognized that the evidence in this case is not confined to those two aspects. Although the DNA evidence was strong corroborative evidence in the case against Petitioner, it is probable that even without the DNA evidence Petitioner would have been convicted. Petitioner now attempts to blame counsel for his plight, but in fact Trial Counsel and Appellate Counsel performed their work in a professional conscientious manner.

* * *

**Conclusions of Law**

* * *

    2.    Trial Counsel did exercise professional skill and judgment in diligently and conscientiously advancing the defense of the Petitioner.

    3.    Appellate Counsel did exercise professional skill and judgment in diligently and conscientiously advancing the appeal of Petitioner.

    4.    Petitioner has shown no basis for post-conviction relief in these proceedings.

Resp. Exh. 137, pp. 4-6.

The PCR trial judge was correct. His decision, that Petitioner did not receive constitutionally ineffective assistance of trial and appellate counsel, was neither contrary to nor an unreasonable application of clearly established federal law, and Petitioner is not entitled to relief on these claims.

**II.**   <u>**Remaining, Unaddressed Claims for Relief**</u>

As previously noted, Petitioner alleged numerous grounds for relief in his Petition which he did not address, but also did not specifically waive, in his memorandum in support. Although Petitioner has not supported the majority of his claims with briefing, the court has nevertheless reviewed the remaining claims and determined that they are without merit. Accordingly, Petitioner is not entitled to relief on those claims. *See* 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas

corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true.")

**RECOMMENDATION**

For these reasons, I recommend that the Petition for Writ of Habeas Corpus be DENIED, and that a judgment of DISMISSAL be entered herein.

**SCHEDULING ORDER**

Objections to these Findings and Recommendation(s), if any, are due October 7, 2005. If no objections are filed, the Findings and Recommendation(s) will be referred to a district court judge and go under advisement on that date.

If objections are filed, the response is due no later than October 21, 2005. When the response is due or filed, whichever date is earlier, the Findings and Recommendation(s) will be referred to a district court judge and go under advisement.

DATED this  22nd  day of September, 2005.

                 /s/ Donald C. Ashmanskas
                 Donald C. Ashmanskas
                 United States Magistrate Judge